**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 06-81036-CIV-RYSKAMP/VITUNAC

MARRERO ENTERPRISES OF
PALM BEACH, INC., a
Florida Corporation,

       Plaintiff,

v.

ESTEFAN ENTERPRISES, INC., a
Florida Corporation,

       Defendant.

_____/

**ORDER DENYING MOTION TO DISMISS AND LIFTING STAY**

THIS CAUSE comes before the Court pursuant to the motion to dismiss of Estefan

Enterprises, Inc., filed December 8, 2006 **[DE 5]**.  Plaintiff Marrero Enterprises of Palm Beach,

Inc. responded on December 29, 2006 **[DE 11]**.  Estefan Enterprises, Inc. replied on January 9,

2007 **[DE 15]**.  The Court stayed this action on March 30, 2007 **[DE 27]** pending resolution of

this motion.  This motion is ripe for adjudication.  Him with you

**I.     BACKGROUND**

Plaintiff Marrero Enterprises of Palm Beach, Inc. ("Plaintiff") is the owner of the

Cocobongo nightclub located in West Palm Beach, Florida.  (Compl., 7.)  Defendant Estefan

Enterprises, Inc. ("Defendant") is the owner of a restaurant called Bongos Cuban Café with

locations in Miami and Orlando, Florida. (Compl., 10.) Defendant has alleged that it owns a federally registered trademark, Registration No. 2,490,999, for the mark Bongos Cuban Café. (Compl., 11.) Plaintiff believes that Defendant, on or about March 31, 2006, threatened litigation and demanded that Plaintiff cease and desist any use, display, or advertising of any mark containing the term "bongos" and/or any other similar mark or name, and provide proof of the demanded cessation. (Compl., 16.) Plaintiff denies that its use of the mark violates any federal or other rights Defendant claims to have in the mark. (Compl., 19.) Plaintiff brings this action pursuant to 28 U.S.C. §§ 2201 and 2202 for declaratory judgment that its use of the mark "Cocobongo" does not infringe upon any of Defendant's alleged marks. Defendant has moved to dismiss the complaint pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction on the grounds that the parties reached a settlement prior to the filing of this action.

## II.    LEGAL STANDARD

The Declaratory Judgment Act provides that "in a case of actual controversy within its jurisdiction...any court of the United States...may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Whether an actual case or controversy exists in a declaratory judgment action involving trademarks requires a two-part inquiry. First, the declaratory plaintiff must have a real and reasonable expectation of litigation. See Windsurfing International Inc. v. AMF, Inc., 828 F.2d 755, 757 (Fed. Cir. 1987); McCarthy, Trademarks and Unfair Competition § 32:18. Second, the plaintiff "must have engaged in a course of conduct that brought it into adversarial conflict with the declaratory defendant." See id. (quotation omitted). "The sole requirement for

jurisdiction under the Act is that the conflict be real and immediate, i.e., that there be a true, actual 'controversy' required by the Act." Alphamed Pharms. Corp. v. Arriva Pharms., Inc., 391 F. Supp.2d 1148, 1156 (S.D. Fla. 2005) (quotation omitted)).

This Court must dismiss a case upon determining that it lacks subject matter jurisdiction to hear the case, regardless of how far the proceedings have progressed. See Smith v. GTE Corp., 236 F.3d 1292, 1299 (11th Cir. 2001) ("[A] court must zealously insure that jurisdiction exists over a case, and should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises."); Wascura v. Carver, 169 F.3d 683, 685 (11th Cir. 1999) ("If a district court lacks subject matter jurisdiction over a claim... it necessarily follows that the claim states no violation of federal law."). Plaintiff bears the burden of demonstrating that this matter is within this Court's subject matter jurisdiction. See Taylor v. Appleton, 30 F.3d 1365, 1367 (11th Cir. 1994) (party invoking jurisdiction bears burden of producing necessary facts to establish subject matter jurisdiction).

Rule 12(b)(1) attacks on this Court's subject matter jurisdiction may be either facial or factual. See Lawrence v. Dunbar, 919 F.2d 1525, 1528-29 (11th Cir. 1990). Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint. Id. When courts review facial attacks on its subject matter jurisdiction, they must take the allegations of the complaint at face value and ascertain whether they adequately allege subject matter jurisdiction. See Lawrence, 919 F.2d at 1529. Factual attacks challenge subject matter jurisdiction as a matter of fact. Id. Courts may examine materials outside the four corners of the complaint when adjudicating a factual attack on its subject matter jurisdiction. Id. at 1529. In a factual review, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed

4

material facts will not preclude the trial court from evaluating for itself the merits of *jurisdictional* claims." Id. (emphasis added).  Thus, a court reviewing a motion to dismiss pursuant to Rule 12(b)(1) may consider facts outside the pleadings so long as they relate to jurisdictional questions.

Some factual attacks on federal court jurisdiction also involve facts that are determinative of the merits of the action.  See id. at 1528-30 (whether U.S. border patrol agent was within the scope of his duties at the time of accident giving rise to federal tort claim controlled both jurisdictional and liability questions); Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A., 104 F.3d 1256, 1266 (11th Cir. 1997) (whether defendant was an employer under the ADEA determined whether the ADEA governed the dispute as well as whether plaintiff stated a claim for relief pursuant to the statute).  When a motion to dismiss implicates both jurisdictional and actual facts, the court should treat the motion to dismiss "as a direct attack on the merits" and proceed pursuant to Rule 12(b)(6), which requires the court to take the complaint at face value, or Rule 56, which allows the court to rule on the merits.  Lawrence, 919 F.2d at 1529 (quoting Williamson v. Tucker, 645 F.2d 404, 415-16 (5th Cir.), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396 (1981)).[1]

Seeking to obtain the protection of Rule 12(b)(6), Plaintiff claims that Defendant's challenge to this Court's subject matter jurisdiction is inextricably intertwined with the merits of this action.  The Court disagrees.  At issue here is whether Plaintiff and Defendant reached a settlement prior to the filing of this declaratory action. As noted above, the merits of this action

---

[1]Decisions of the Fifth Circuit issued prior to the close of business on September 30, 1981 are binding in the Eleventh Circuit.  See Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981).

5

ask whether Plaintiff's mark infringes any of Defendant's marks.  The Court will address the merits of this action only if it rules in favor of Plaintiff on the jurisdiction question.  Whereas the Court will review the history of the parties' correspondence in adjudicating this motion to dismiss, the Court will treat the instant motion as a factual attack on its subject matter jurisdiction.  Accordingly, the Court will review the motion pursuant to Rule 12(b)(1), which allows it to review matters outside the complaint so long as they relate to jurisdictional, not actual, facts.

### III.    DISCUSSION

**A.    History of the Parties' Correspondence**

The history of the parties' correspondence is as follows.  On June 20, 2003, counsel for Defendant wrote Plaintiff, informing it that its use of the name "bongo" infringed on Defendant's marks in violation of state and federal law.  The letter requested immediate cessation of the alleged infringing activity and informed Plaintiff that if it did not provide written assurance and documentation of its cessation within two weeks that Defendant would "take whatever legal action is deemed necessary to protect [its] rights."  Plaintiff's registered agent responded on July 8, 2003, requesting that Defendant send documentation of the alleged confusion relating to the mark.  Counsel for Defendant responded on July 24, 2003, encouraging Plaintiff to retain a trademark lawyer and reiterating the demands of the June 20, 2003 letter.  The registered agent for Plaintiff responded on August 2, 2003, stating that he would be contacting a trademark lawyer and requesting documentation related to the registered marks.  Counsel for Defendant responded on August 5, 2003, advising that unless Plaintiff immediately complied with the

demands, "this matter will be referred to litigation." On September 6, 2003, counsel for Plaintiff wrote to Defendant, informing Defendant that Plaintiff was "in the process of reviewing and considering [the] claims and would ask that, before you initiate any formal proceedings in this matter you give [an] opportunity to thoroughly review the matter....We anticipate responding to you shortly." The parties then stopped communicating.

On March 31, 2006, counsel for Defendant wrote counsel for Plaintiff and informed Plaintiff that its use of the name "Cocobongo," was "unlawful" and, "at a minimum," violated federal trademark law under the Lanham Act and gave rise to state law claims for both unfair competition and deceptive and unfair trade practices. "[I]f litigated," the letter continued, "[Defendant] would be entitled to compensatory damages, including disgorgement of profits, which may be trebled by the Court, injunctive relief, and attorney's fees." The letter further noted that the Lanham Act provides for individual liability for all persons involved in the alleged infringing activity and that Defendant has had previous success in obtaining injunctive relief from a federal court against the Tampa, Florida establishment using the name Cocobongo. The letter also attached the relevant order for preliminary injunction from the Tampa action. Defendant demanded that Plaintiff immediately cease and desist the alleged infringing activity. The letter concluded, stating that if Defendant did not receive a response by April 14, 2006, it would "have no choice but to seek all available relief, both legal and equitable."

Counsel for Plaintiff responded on April 5, 2006, explaining Plaintiff's feeling that the inclusion of the permanent injunction order was "an apparent tactic to instill fear." Defendant responded on April 26, 2006, expressing dissatisfaction with what it perceived as the lack of substantive content in the response and informed Plaintiff that failure to respond by May 1, 2006

would leave Defendant with "no choice but to seek recourse with the Courts."

Plaintiff responded on May 1, 2006, requesting additional documentation of Defendant's claim to the first use of the mark.  Plaintiff further stated that it would "carefully consider the prudence of changing names" provided it received the first use information.  Plaintiff also requested terms relating to the changing of the name of its establishment, such as a phase out period and a reasonable time to change its signage.  The May 1, 2006 letter further stated that since Plaintiff "is willing to work with you in these regards, and the fact that this matter has been bantered about the past three years without action or consequence, I would urge that you do not employ undue haste in these matters and that you at least discuss it with me before running to the court to file a complaint."

Defendant responded on June 7, 2006, stating that it was "very willing to be flexible in terms of the phaseout.  Please let us know what you proposed in this regard."

Plaintiff responded on June 23, 2006, stating that it was "currently considering a new name," and that "this matter will be substantially resolved by [Plaintiff's counsel's] return on July 7."  Plaintiff expressed an intent to "seek a generous phaseout period."

Defendant responded on July 14, 2006, wishing to call to resolve and work out the phaseout period.

Plaintiff e-mailed Defendant on July 17, 2006, stating that Plaintiff "has been investigating prices to change signs, and supporting promotional materials."  The e-mail further provided:

> before committing to a complete name change...if there is any other
> possible resolution of this matter, e.g., a licensing agreement

8

whereby [Plaintiff] gets to keep his current name, but without the fear of being sued.... please advise.  Otherwise, we would ask 12 months to completely change names.  I can represent any selected name would exclude the written word "BONGO" altogether.  I trust your client has no objection to the word COCO.  Please let me know, again, in informal terms if that is desirable.  We can work out solid details once we have agreed in principle.

Defendant responded on August 1, 2006, stating that Defendant is "not interested in a licensing agreement, [but that] they are willing to allow six months for your client to transition the name.  Please let me know if this is agreeable, and, if so, we will prepare an appropriate agreement."  On September 11, 2006, Defendant e-mailed Plaintiff, asking simply, "[w]hat is the status of the name change?"

Counsel for Defendant has submitted a declaration in which she avers that both she and Defendant "were under the distinct impression that a settlement had in fact been reached and that Marrero was in the process of changing its name, including signage, per the parties' agreement."  Counsel further avers that neither she nor her client received prior notice of the filing of this action.  Accordingly, Defendant requests dismissal of this action on the grounds that no actual case or controversy exists such that Plaintiff may claim subject matter jurisdiction pursuant to the Declaratory Judgment Act.

**B.    The Parties Failed to Reach a Settlement Agreement**

The construction of a settlement contract is governed by state contract law.  See Blum v. Morgan Guar. Trust Co. of New York, 709 F.2d 1463, 1467 (11th Cir. 1983).  Under Florida law, an "agreement" is a manifestation of mutual assent of legally competent parties to each other.  See Tlz Properties v. Kilburn-Young Asset-Management, 937 F. Supp. 1573, 1578 (M.D.

Fla. 1996) (citation omitted).  Florida law highly favors settlement agreements, and enforcement thereof is appropriate even if the parties agree to agree on a certain term in the future.  See Robbie v. City of Miami, 469 So.2d 1384, 1385 (Fla. 1985); Innkeepers International, Inc. v. McCoy Motels, Ltd., 324 So.2d 676, 678 (Fla. 4th DCA 1975).  "The agreement to agree is enforceable if it is sufficiently specific to be capable of implementation and all the essential agreements are set forth." Sav-a- Stop, Inc. v. Jaydon, Inc., 124 B.R. 356, 359 (M.D. Fla. 1991). Florida courts have distinguished the contract itself from the preliminary negotiations leading up to the execution of the contract; as long as any essential matters are left open for further consideration, the contract is not complete.  See Central Properties, Inc. v. Robbinson, 450 So.2d 277, 280 (Fla.1st DCA 1984), quashed in part on other grounds, 468 So.2d 986 (Fla. 1985) (where parties continued to negotiate on essential terms there is not a meeting of the minds).

The Court has reviewed the entire history of the correspondence between the parties and has concluded that no agreement was ever reached as to any terms of the settlement, much less all of the necessary terms of the settlement.  The Court has reviewed the cases Defendant cites for the proposition that the parties did indeed reach a settlement agreement.  Prolonged discussion of the facts of these cases is unnecessary; it is sufficient for the Court to note that, in each of these cases, the parties had arrived at enforceable settlement agreements in that they had agreed on all essential terms.

Here, the parties simply continued to negotiate some of the essential terms of a possible settlement, but there was no meeting of the minds as to any essential or material terms.  Rather, the parties simply stopped communicating.  Plaintiff ultimately did not change the mark or the name.  The parties' correspondence is full of examples of the parties' failure to agree on essential

terms of the "settlement."  The communications between the parties failed to discuss resolution of Defendant's claim for compensatory damages, disgorgement of profits, treble damages, attorneys' fees, the substantive character of any name change, the identity or components of any alternative means of resolution, and the permitted activities during any phaseout.  In the July 17, 2006 communication, Plaintiff represented that any new name would exclude the written word "bongo" and requested notice as to whether such was desirable.  Neither the August 1, 2006 nor the September 11, 2006 communications from Defendant addressed whether such was indeed desirable.  The July 17, 2006 e-mail requested 12 months to change names completely.  The August 1, 2006 response stated that Defendant would allow a six-month period for the changing of the name.  Since the July 17, 2006 communication was the last missive from Plaintiff to Defendant, this proposal was never accepted, there was no meeting of the minds on the term of the timeline of the phaseout.  Finally, the July 17, 2006 e-mail requested whether Defendant was amenable to a licensing agreement that would allow Plaintiff to keep its current name. Defendant rejected the suggestion in August 1, 2006 letter.

Defendant stresses that the issue of the name change was the sole "essential" term of any settlement, but the declaration of Christopher Marrero, Plaintiff's officer, indicates that the uncertainty as to the discussed phaseout period was a significant issue that would seriously affect his company's cash flow and his legal rights in the commercial market.  Defendant maintains that it was somehow implicit in the parties' communications that Plaintiff's activities would not be limited during the phaseout period, but such an inference cannot be drawn from the communications, as the communications do not address that issue in any manner whatsoever. Defendant also downplays Plaintiff's concern with the issue of individual liability, stating that

exchanges of releases necessarily encompass both corporate and individual defendants.  Yet the communications give no indication that the parties even contemplated exchanging releases. Defendant also states that it would have waived any claim to damages had it obtained a name change, but, again, such is not expressly stated, or even implied, at any point in the parties' communications.  Absent a meeting of the minds on these essential terms, the Court cannot say that the parties reached a settlement agreement.

### C.        Plaintiff Had a Reasonable Apprehension of Imminent Litigation

"The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy." GTE Directories Publishing Corp. v. Trimen America, Inc., 67 F.3d 1563, 1567 (11th Cir. 1995) (quoting Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 512 (1941)).  The fundamental question "is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Id.  Insofar as it relates to trademarks, the "actual controversy" requirement is satisfied if a plaintiff can show "a real and reasonable apprehension that he will be subject to liability" if he continued using the mark in question.  Jeffrey Banks, Ltd. v. Jos. A. Bank Clothiers, Inc., 619 F. Supp. 998, 1002 (D. Md. 1985) (quotation omitted).  See also Apex Beauty Products Manufacturing Corporation v. Brown Shoe Co., 209 F. Supp. 73, 74 (S.D.N.Y. 1962) ("a

justiciable controversy has been engendered by defendant's charges of unfair competition and

infringement of its federally registered trademark.").  Nor is it "essential that there be a direct

threat of litigation in order to invoke the Declaratory Judgment Act.  It is sufficient if such a

threat is implicit in the attitude of the defendant as expressed in circumspect language contained

in a letter."  Simmonds Aerocessories, Ltd. v. Elastic Stop Nut Corp. of America, 257 F.2d 485,

490 (3rd Cir. 1958) (citation omitted).

　　　　The Court's review of the parties' correspondence in this matter leaves no doubt that

Defendant indeed threatened Plaintiff with litigation in this matter.  Defendant outright

threatened Plaintiff with litigation the multiple times in writing in 2006.  That the parties may

have attempted settlement negotiations does not obviate the threatening import of Defendant's

letters.  See Jeffrey Banks, 619 F.Supp. at 1002 (noting that failure to settle "resurrected the

threatening shadow" of a prior letter complaining of alleged trademark violations).  Defendant

may not make demands under threat of litigation and then come before the Court and state that its

threats were not real and that Plaintiff's apprehension of suit was not reasonable.


## IV.　　CONCLUSION

　　　　THE COURT, having reviewed the motion and attendant filings and being otherwise

fully advised, hereby

　　　　ORDERS AND ADJUDGES that the motion to dismiss of Defendant Estefan

Enterprises, Inc., filed December 8, 2006 **[DE 5]** is DENIED.  It is further

　　　　ORDERED AND ADJUDGED that the stay imposed on March 20, 2007 is LIFTED.

Defendant shall have twenty (20) days from the date of this Order to respond to discovery

13

directed toward the merits of this dispute.  Defendant need not respond to discovery directed toward the issue of settlement, as the Court has concluded that the parties did not reach a settlement agreement.

DONE AND ORDERED at Chambers in West Palm Beach, Florida, this 21st day of May, 2007.


S/Kenneth L. Ryskamp
KENNETH L. RYSKAMP
UNITED STATES DISTRICT JUDGE