UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
CASE NO. 06-81036-CIV-RYSKAMP

| | |
|---|---|
| MARRERO ENTERPRISES OF<br>PALM BEACH, INC.,<br>a Florida corporation, | **EEI'S REPLY IN SUPPORT OF<br>MOTION FOR LEAVE TO<br>JOIN NECESSARY PARTY AND<br>TO FILE AMENDED** |
| Plaintiff/Counter-Defendant,<br>v. | **AFFIRMATIVE DEFENSES<br>AND COUNTERCLAIM** |
| ESTEFAN ENTERPRISES, INC.,<br>a Florida corporation, | |
| Defendant/Counter-Plaintiff. | |
| _____/ | |

Initially, there has been an intervening event since the filing of EEI's Motion to Join Noble as an indispensable party which moots this Motion, at least in part. That event is the fact that the name of the Coco Bongo nightclub has been changed to Ibiza nightclub. See Declaration of K. Giel and accompanying attachments, Exh. A hereto. Although Marrero claims to still "use" the Coco Bongo trademark, see flyers attached hereto as Exh. B, that is not trademark use in the legal sense since it is not the name of the business at all, but is merely advertising or promoting Noble's Cancun Coco Bongo nightclub, which is not objectionable. EEI has filed a Motion for Summary Judgment as to the Declaratory Action, *inter alia*, on this basis. See D.E. # 93 or 94 filed under seal. Inasmuch as there is no live justiciable controversy between the parties over the continuing use of the Coco Bongo name, the Court lacks subject matter jurisdiction over any declaratory claim concerning "use" of the name Coco Bongo in connection with the operation of a nightclub and the same is true whether or not Noble is joined. Moreover, the name change impacts the infringement action in that there is nothing now to enjoin,

only a claim for past damages.  Since it appears from discovery that Noble's "profits" from the use of the Coco Bongo name for the short period of time of the license agreement is minimal, particularly since he derived no monies from the operation of the nightclub itself and since the paltry "license fee" he received now appears to be more in the nature of a settlement sum, EEI has no motivation to join Noble for the sole purpose of claiming past damages.

Therefore, if EEI's Motion for Summary Judgment as to the Declaratory Judgment Action is granted, joinder of Noble is unnecessary.  However, in the event EEI's Motion is not granted, EEI files this Reply in Support of its Motion to Join Noble.

**A.  Timeliness**

Most of Noble's arguments center on the timing of EEI's request to amend.  Here is the actual chronology of events:  The Court entered its Scheduling Order on January 23, 2007.  The Scheduling Order provided the parties with approximately three months and one week to conduct discovery before the deadline to amend pleadings and join additional parties.  EEI filed a Motion to Dismiss for lack of subject matter jurisdiction on December 8, 2006 (D.E. #5) and a Motion to Stay the proceedings in its entirety on January 29, 2007 (D.E. # 21).  The case was thereafter stayed from March 20, 2007 to May 21, 2007, allowing discovery to proceed.  Once discovery proceeded, EEI filed its motion for leave to amend approximately three months and three weeks thereafter (and within days after Marrero's deposition).  On this record, then, and given the stay, EEI's request can hardly be viewed as "horribly belated" as Noble suggests.  *Cf. Forstmann v. Culp*, 114 F.R.D. 83 (M.D.N.C. 1987) (leave denied where requested more than one year after deadline set by court); *Sosa v. Airprint Systems, Inc.*, 133 F.3d 1417 (11th Cir. 1998)

(leave denied where attorney waited six months after receipt of discovery which formed the basis of the amendment).

### B. Knowledge of Facts re: Amendment

Noble next argues that EEI should have moved to amend sooner because the facts forming the basis of its amendment were known to it earlier. In support of this argument, Noble points to the production of the Assignment and License Agreement in January after the close of discovery in the TTAB proceedings and to the deposition of Roberto Noble conducted in the TTAB proceedings in March. As to the Assignment and License Agreement, it is less than a model of clarity and, in fact, EEI's efforts to determine the meaning of various provisions are the subject of pending motions to compel in this case. See D.E. # 46 and 93 or 94 filed under seal. Just by way of example, Marrero's proprietary "Parrot logo" is expressly excluded (with no description or drawing attached) (see ¶2(e) of License Agreement filed under seal); the agreement is terminable at will but does not specify whether Marrero's assigned rights revert back to Marrero (see ¶5); and there is a provision for termination by reason of abandonment by Noble which is a complete non sequitor (see ¶5).

Moreover, the license purports to assign marks from Marrero to Noble, some of which were never used by Marrero, and then, by separate assignment one month after the license, purports to assign the same marks again from Marrero to Noble. It was very unclear, until Marrero was deposed on August 28, 2007, whether Marrero was utilizing only its "common law" trademark rights prior to the license/assignment; whether Marrero was using both his trademark and Noble's trademark prior to the license/assignment; whether Marrero was using both his trademark and Noble's trademark after the

3

license/assignment; whether Marrero retained <u>any</u> rights to the name "Coco Bongo" <u>after</u> the license/assignment. The answers to these questions determined whether Noble was an appropriate party to this lawsuit and, if so, whether he was an <u>indispensable</u> party such that his joinder was <u>mandatory</u> or whether he was merely a <u>necessary</u> party such that his joinder was more a matter of <u>discretion</u>.

So that the Court can see for itself the confusion between whose trademark(s) were being used at what point in time, EEI attaches hereto the following:

Exh. C - samples of various trademarks used by Marrero pre-Noble license/assignment
Exh. D - samples of pre-Noble license/assignment of Marrero's use of Noble's "logo"
Exh. E - samples of Noble's trademarks
Exh. F - samples of trademarks used by Marrero post-Noble assignment/license

Noble's deposition testimony regarding Marrero <u>definitely did not</u> clarify matters:

Q: Have you ever used the name "Coco Bongo" in the United States as a nightclub?
A: In connection with this nightclub?
Q: In connection with a nightclub, any nightclub. Have you ever used the name "Coco Bongo" in the United States in connection with any nightclub?
A: Does that mean the name of the nightclub?
Q: Yes.
A: (No response).
Q: Have you ever used the name "Coco Bongo" in the United States in connection with any nightclub?
A: Yes.
Q: All right. What nightclub?
A: Marrero.
Q: You used the name "Coco Bongo" in connection with Marrero's nightclub?
A: To the best of my recollection.
Q: Recollection? Why? Did this happen a long time ago?
A: It happened with my counsel.
Q: With your lawyer?
A: Yes.
Q: Your lawyer made this happen?
A: Yes. And my CEO.
Q: Who is that?
A: Isaac Halabe.

Q: So, how is it that you used your trademark in connection with Marrero's trademark?
A: I don't know the specifics on that.
Q: You don't know how that happened?
A: No.
Q: Okay. Well, this nightclub, being Marrero Nightclub, you're talking about a nightclub in West Palm Beach, Florida, is that what you are referring to?
A: I think so.
Q: Is that nightclub using your mark, Mr. Noble?
A: I don't know the specifics of it.
Q: Oh. Okay. Have you ever seen that nightclub? Have you ever visited it?
A: No, I haven't.
Q: Do you know anything about it?
A: I don't know. I know - - I heard Isaac Halabe talk about it.
Q: Okay. So, do you know anything about them? What can you tell me?
A: No.
Q: No?
A: No.
Q: Do they have entertainment?
A: I really don't know.
Q: All right. Do they have a website?
A: I don't know.

[Whereupon Marrero's website www.cocobongowpb.com was accessed on a computer and Noble was shown Marrero's "Coco Bongo Supernight Club" trademark on the website]

Q: So, do you see your trademark anywhere on that website?
A: I don't understand your question.
Q: Do you know what your trademark looks like?
A: My name is up there.
Q: Where is your name?
A: Coco Bongo.
Q: Okay. Let's see where your - - where is that example of - - Is there anything on that website that would indicate that they are in any way affiliated with you?
A: The name.
Q. The name?
A: Yes.
Q: So, you think that, and let me – does theirs say "Coco Bongo Super Nightclub?"
A: It says Super Nightclub there.
Q: Right. So you are indicating that, that is your trademark?
A: No. I am answering your question.
A: It says, "Coco Bongo Super Nightclub."
Q: And, Mr. Noble, we are both in agreement it says that. I am asking you if

5

|   |   |
|---|---|
| | that is your trademark. |
| A: | It is my name.  It is my name.  Coco Bongo. |
| Q: | Okay.  You are saying he is using the same name as you?  Is that what you are saying? |
| A: | They are using the same name. |
| Q: | All right.  I am asking you whether on that website where it says "Coco Bongo Super Nightclub" do you believe that is your name being used there? |
| A: | The name, yes. |
| Q: | How is that your name? |
| A: | It says "Coco Bongo." |
| Q: | So, you are saying they are using the same name as you or are you saying they are using your name? |
| A: | (No response). |

Roberto Noble deposition at 63:16-17, 20-24; 64:1-8, 10-12, 16-17, 21-25; 65: 1-25; 66:1-8; 68:7-8, 16-17, 21-25; 69:1-10, 19-21, 70:8-9, 15-17; 71:7-8, 10-12, 74:22-25 and 75:1-7 attached hereto as Exhibit G.

The License Agreement was not presented to Noble, as Mr. Santucci's Declaration states, and in fact Mr. Santucci himself raised the issue of the license Agreement and his client then deferred to Mr. Santucci:

|   |   |
|---|---|
| Q: | The question is, you previously testified that you were using the trademark, "Coco Bongo" in the United States through Marrero's Club; is that what you said? |
| A: | Why don't we refer to the - - |
| Mr. Santucci: | License agreement. |
| Q: | Is it your testimony - - you just referred to the license agreement - - Is it your testimony you re accomplishing that through the licensing agreement with them? |
| A: | You would have to ask my lawyer. |

Roberto Noble Deposition at 83:4-7, 10-13, 20-24, attached hereto as Exh. G.

This is the testimony which Marrero now claims gave EEI sufficient notice to join him to this action previously.  Despite best efforts, it was entirely unclear whether Noble was claiming that HIS trademark was being used or whether he was merely claiming that Marrero was <u>infringing</u> his trademark by using a similar name, albeit Marrero's mark.

6

Marrero was clear at his deposition, however, that prior to the license/assignment, he was using both his trademark and Noble's trademark (but only as an infringer as to Noble's trademark) and that since the license/assignment, he was only using Noble's registered trademark and had retained no rights independent of Noble to use the name "Coco Bongo" in connection with a nightclub. (C. Marrero Deposition at 58, 64, 147-48, attached hereto as Ex. H).  Despite this clarity, Mr. Santucci states in his Declaration opposing EEI's Motion to Join Noble (D.E.# 69 Ex. 1) that Marrero's deposition testimony added nothing to Noble's testimony.  See D.E . # 69 Ex. 1, p. 9.

With regard to the "parrot logo" clause, unless one knows what that logo consists of and, specifically, whether it incorporates the trademark "Coco Bongo," one cannot know whether Marrero had retained rights in the name "Coco Bongo" separate and apart from Noble's registration.  EEI has learned there are two versions of the "Parrot logo, (see attached Exh. I), one which incorporates the name Coco Bongo and one which does not.  Noble argues that the agreement is clear that ALL rights to the name were transferred to Noble; however, if that were true, the "parrot logo" clause would seem to be superfluous.  Particularly since EEI was aware that there was a version which incorporated the name "Coco Bongo," at a minimum, this provision needed clarification before EEI could be in a position to inform the Court that the ONLY trademark Marrero was using was Noble's registered trademark, making him an indispensable party, and that Marrero had retained no right to use any form of the name "Coco Bongo" outside of the rights conferred by Noble.  Of course, had EEI moved to amend without a firm evidentiary basis, Marrero would no doubt then have claimed "Rule 11 violation."  See *Loggerhead Turtle v. County Council of Volusia County*, 148 F.3d 1231, 1256 (11th Cir.

7

1998). Marrero clarified that the "parrot logo" excepted from the agreement was the version without "Coco Bongo." Marrero depo at p. 91; Exh. H.

Further, efforts were made to stall EEI's discovery of these salient facts, i.e., whose rights were actually at issue in this litigation. Noble's federal registration was not pled by Marrero, although one would typically allege a federal registration if one had rights thereunder. EEI propounded interrogatories on the subject and received such evasive responses, it was forced to file a motion to compel which is still pending before the Court. See D.E. #46. Marrero initially listed Noble and 5 of his employees and agents in his initial disclosures, then suddenly eliminated all of those except the ones he intended to use at trial and began a campaign of avoiding discovery which might have revealed this sooner. See Exh. J and K hereto. Perhaps the most revealing and truest statement made by Noble in his response to EEI's joinder motion is the following:

> Every attempt has been made by the Plaintiff to frame the issues such that either Noble's trademark registration, or the licensing agreement with Marrero is not a part of this case. Response at p. 9.

EEI would add that every attempt was made to make it as difficult as possible for EEI to learn the facts necessary to determine whether Noble was an indispensable party to this action.

### C. Noble as Real Party in Interest

EEI has cited numerous cases requiring that the owner of a trademark be made a party to an infringement action involving the owner's mark. *See, e.g., Lisseveld v. Marcus,* 173 F.R.D. 689, 693 (M.D. Fla.1997) ("The licensor of a trademark that is the subject of an infringement action by a licensee falls squarely within the language and policy of Rule 19."), and other authorities cited in EEI's Motion for Leave at pp 3 - 6.

8

The sole basis upon which Marrero attempts to distinguish these authorities is its contention that this matter is not an "infringement" action brought by the licensee since he is only seeking a declaration that the use of Noble's trademark is "*non-infringement*." There is however, no difference, other than one of semantics, between an action seeking to protect the owner's ability to continue to use his mark through a straw man, and an "infringement" action.  In either instance, Noble's mark will have to be compared with EEI's mark to determine if the use of Noble's mark is permissible or causes a likelihood of confusion with EEI's mark.  The requested declaration of "non-infringement" necessarily involves the assertion of rights in Noble's mark, derived solely through the License Agreement.

Marrero cites no authorities supporting the proposition that such a "non-infringement" declaratory action may be pursued by a bare licensee, and the two authorities Marrero does cite are off-the-point and unavailing.  *Gilliam v. American Broadcasting Companies, Inc.*, 538 F.2d 14 (2d Cir. 1976) and *Association of Co-op. Members, Inc. v. Farmland* 684 F.2d 1134 (5th Cir. 1982) are immediately distinguishable as neither even involved rights derived under a license agreement, let alone a licensee seeking a declaration of non-infringement in using its licensor's trademark.  Indeed, the very point made in both those cases was that the rights being asserted by the plaintiffs therein were *wholly distinct rights* from the intellectual property rights owned by a claimed necessary party.  *See, e.g., Gilliam*, 538 F.2d at 26 ("Monty Python **is relying solely on its copyright in the script and on its rights as an author. No claim is being made that Monty Python has rights derived from the copyright held by another**.");  *Association of Co-op.,* 684 F.2d at 1143 ("[Joinder of owner of

9

trademark in one element of a composite mark not necessary] where, as here, **the rights asserted in the trademark derive not from a license agreement but from the common law**. It is irrelevant that the mark is a composite, an element of which belongs to a third party and might be the subject of a license agreement.")

Marrero, by contrast, has no such wholly distinct rights, having assigned any arguable rights he did have to Noble and thereafter operating solely as Noble's licensee. Moreover, the blithe suggestion that EEI should file a separate action against Noble is at odds with the entire purpose of the joinder rule, and only highlights EEI's point that the failure to join Noble will result in the inability to grant complete relief herein and lead to successive litigation, against Noble and his next licensee. *See, e.g., Jaguar Cars Ltd. v. Manufactures des Montres Jaguar*, 196 F.R.D. 306 (E.D. Mich. 2000) (joinder of trademark owner necessary where nothing would prevent owner from utilizing another distributor after adjudication of case sub judice).

Marrero states, without specifics, that EEI is trying to gain some kind of strategic advantage in either an existing or future case. To the contrary, EEI seeks to consolidate the true parties in interest to achieve finality and to avoid additional future litigation. Finally, Marrero's request for sanctions is, once again, overly aggressive and not well taken. A request to file a pleading beyond the time set by the Court's pre-trial order, which fully acknowledges it is beyond the time set by the order, is not a failure to comply with the order. By contrast, Mr. Santucci's declaration filed in support of his response, is a clear attempt to mislead the Court.

The resistance to EEI's motion to amend is a transparent attempt to "un-involve" Noble despite the fact that this lawsuit could not have been brought by Marrero without

Noble's permission; Marrero is not paying Noble's counsel for its representation in this case; Noble is the owner of the only intellectual property rights at issue in this lawsuit; Marrero has disclosed Noble and 5 of its employees or agents as persons with relevant knowledge; Marrero intends to utilize the CEO of Noble's company as one of his witnesses at trial.  Noble is clearly utilizing Marrero – who is not even using the Coco Bongo name anymore as a trademark – as a straw man to litigate issues which Noble is interested in without subjecting Noble to the burdens and responsibilities that attach to party status and without being bound with this Court's decision if dissatisfied.  EEI, therefore, requests joinder of Noble to avoid successive, duplicative, and harrassive litigation.

    Respectfully submitted,

    KAREN L. STETSON, ESQ.
    Attorney for Defendant/CounterPlaintiff
    Estefan Enterprises, Inc.
    P.O. Box 403023
    Miami, Florida 33140
    Telephone: 305-532-4845
    Facsimile:  305-604-0598

    By: <u>s: Karen L. Stetson</u>
       Karen L. Stetson
       Florida Bar No. 742937
       Meredith A. Frank
       Florida Bar No. 502235

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I electronically filed the foregoing document with the Clerk of Court using CM/ECF on this 12th day October, 2007.  I also certify that the foregoing document is being served this day on Michael Santucci, Esq., Silverman

Santucci, LLP, 500 West Cypress Creek Road, Suite 500, Fort Lauderdale, Florida 33309

via transmission of Notices of Electronic Filing generated by CM/ECF.

By: s/Karen L. Stetson<br>
Karen L. Stetson